UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JERRY MENENDEZ SALAZAR,

    Plaintiff,

v.                                              Case No:   2:15-cv-716-FtM-DNF

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

_____

**OPINION AND ORDER**

Plaintiff, Jerry Menendez Salazar, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for Disability Insurance Benefits ("DIB").  The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions. For the reasons set out herein, the decision of the Commissioner is **REVERSED AND REMANDED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

    **I.**    **Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision**

    **A. Social Security Act Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382a(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The

impairment must be severe, making the claimant unable to do his previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382(a)(3); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

**B. Standard of Review**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). However, the District Court will reverse the Commissioner's decision on plenary review if the decision applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). The Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a disability benefits case. Social Security Act, § 205(g), 42 U.S.C. § 405(g).

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must prove that he is not undertaking substantial gainful employment. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), *see* 20 C.F.R. §

404.1520(a)(4)(i). If a claimant is engaging in any substantial gainful activity, he will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. *Doughty*, 245 F.3d at 1278, 20 C.F.R. § 1520(a)(4)(ii). If the claimant's impairment or combination of impairments does not significantly limit his physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will be found not disabled. 20 C.F.R. § 1520(c).

At step three, the claimant must prove that his impairment meets or equals one of impairments listed in 20 C.F.R. Pt. 404, Subpt. P. App. 1; *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(iii). If he meets this burden, he will be considered disabled without consideration of age, education and work experience. *Doughty*, 245 F.3d at 1278.

At step four, if the claimant cannot prove that his impairment meets or equals one of the impairments listed in Appendix 1, he must prove that his impairment prevents him from performing his past relevant work. *Id*. At this step, the ALJ will consider the claimant's RFC and compare it with the physical and mental demands of his past relevant work. 20 C.F.R. § 1520(a)(4)(iv), 20 C.F.R. § 1520(f). If the claimant can still perform his past relevant work, then he will not be found disabled. *Id*.

At step five, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work available in the national economy, considering the claimant's RFC, age, education, and past work experience. *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(v). If the claimant is capable of performing other work, he will be found not disabled. *Id*. In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant. *Allen v. Sullivan*, 880 F.2d 1200,

1201 (11th Cir. 1989). There are two ways in which the ALJ may make this determination. The first is by applying the Medical Vocational Guidelines ("the Grids"), and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004). Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he is not capable of performing the "other work" as set forth by the Commissioner. *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

### C. Procedural History

Plaintiff filed an application for DIB on August 21, 2013, alleging disability beginning June 10, 2010. (Tr. 116, 189, 212). Plaintiff's application was denied initially on November 5, 2013, and upon reconsideration on April 29, 2014. (Tr. 132, 141). Plaintiff requested a hearing and, on December 15, 2014, an administrative hearing was held before Administrative Law Judge Maria C. Northington ("the ALJ"). (Tr. 42-103). On June 12, 2015, the ALJ entered a decision finding that Plaintiff was not under a disability from June 10, 2010, through the date of the decision. (Tr. 19-36). Plaintiff filed a request for review which the Appeals Council denied on September 14, 2015. (Tr. 1-6). Plaintiff initiated this action by filing a Complaint (Doc. 1) on October 22, 2015.

### D. Summary of the ALJ's Decision

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 10, 2010, the alleged onset date. (Tr. 21). At step two, the ALJ found that Plaintiff had the following severe impairments: post-traumatic distress order (PTSD), mood disorder, migraines, lumbar degenerative disc disease at L5/S1 with disc protrusion but no stenosis and remaining levels show mild findings and lumbar spondylosis. (Tr. 21). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments

that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 22).

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") secondary to his combined physical and mental impairments to

> perform light work with the ability to occasionally lift and/or carry up to 20 pounds as defined in the Dictionary of Occupational Titles (D.O.T.) and regulations, as well as, lift/carry 10 pounds frequently. This includes sedentary work as defined in Dictionary of Occupational Titles (D.O.T.) and the regulations. There are no limits for sitting in an eight-hour workday with standing and/or walking for up to six hours in an eight-hour workday. In the course of work, he should be allowed the ability to optionally alternate between sitting and standing about every 30-60 minutes, but such would not cause him to be off-task. The claimant is capable of occasionally climbing ramps/stairs, kneeling, and stooping. He is to perform no crawling, no crouching and no climbing of ladders/ropes/scaffolds. He is to perform no work in loud noisy environments secondary to a possible startle reaction and his previous history of noise exposure with no clear hearing impairment. The claimant is to perform no work that would involve hazardous situations such as work at unprotected heights or work around dangerous machinery that may cause harm to self or others. He is to perform no work around weapons and no work in a bright-lighted environment and/or direct sunlight. Secondary to mental impairments, the claimant retains the capacity to understand, remember and carryout simple instructions and perform unskilled work. Secondary to his mental impairments, he retains the capacity to understand, remember and carryout simple instructions and perform simple routine tasks as consistent with unskilled work. In the course of work, he is to have no contact with the public and only occasional contact with coworkers and supervisors, occasional being defined as occasional interaction and coordination, but not necessarily proximity to the same.

(Tr. 24). At step four, the ALJ found that Plaintiff is unable to perform his past relevant work as a construction fire foreman/inspector, construction superintendent foreman, infantry unit leader, and merchandise sales. (Tr. 34).

At step five, the ALJ relied on the testimony of a vocational expert to find that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (Tr. 34-35).  Specifically, the ALJ found that Plaintiff can perform such occupations as electron assembler, plastic assembler, ticket counter, and compact assembler.  (Tr. 35).  The ALJ concluded that Plaintiff had not been under a disability from June 10, 2010, through the date of the decision, June 12, 2015.  (Tr. 37).

**II.     Analysis**

Plaintiff raises three issues on appeal:  (1) whether the ALJ erred by failing to properly accord "great weight" to Plaintiff's VA disability rating; (2) whether the ALJ erred by failing to accord "great weight" to the opinion of Plaintiff's Dr. Pinosky and by failing to provide "good cause" for rejecting Dr. Pinoksy's opinion; and (3) whether the ALJ erred by failing to provide substantial evidence to support his credibility finding and step five determination.

Plaintiff argues that the ALJ erred by failing to give great weight to Plaintiff's VA disability rating and by failing to even mention the VA rating in the decision. (Doc. 27 p. 21-23).  Defendant acknowledges that the ALJ did not mention Plaintiff's VA disability rating, but argues that remand is not appropriate because the VA disability rating is consistent with, and supports, the ALJ's decision.  (Doc. 30 p. 15-16).

The disability decisions of the VA and other agencies are not binding on the Commissioner. 20 C.F.R. § 404.1504.  The court of appeals, however, has stated that although a VA rating is not binding, "it is evidence that should be considered and is entitled to great weight." *Rodriguez v. Schweiker*, 640 F.2d 682, 686 (5th Cir. 1981).  An ALJ need not specify the precise weight given to a VA disability rating if the ALJ's opinion shows the ALJ considered it and implicitly weighed it in reaching a decision.  *See Kemp v. Astrue*, 308 F. App'x 423, 426 (11th Cir. 2009).

The record shows that Plaintiff is a veteran of the United States Army in which he served as an Infantryman from March 2007 to January 2011. (Tr. 2070). Plaintiff completed two foreign tours (Iraq from March 2010 to January 2011) and (Kuwait for three months) and was awarded the Army Commendation Medal, Army Achievement Medal (second award), Purple Heart, National Defense Service Medal, Global War on Terrorism Expeditionary Medal, Global War on Terrorism Service Medal, Army Service Ribbon, Overseas Service Ribbon, Armed Forces Reserve Medal, and Combat Infantryman Badge. (Tr. 2070-71).

In December 2013, the Department of the Army stated that Plaintiff "is physically unfit and recommends a rating of 80 perfect and that the soldier's disposition be permanent disability retirement." (Tr. 268). In December 2013, Plaintiff was officially awarded benefits from the VA at 80 percent, with a 70 percent PTSD disability rating due to: occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood; difficulty adapting in stressful circumstances; the examiner's assessment of his current mental functioning; disturbances in motivation and mood; impaired abstract thinking; impairment of short-and-long memory; anxiety; chronic sleep impairment; depressed mood; weekly panic attacks; and suspiciousness. (Tr. 280).

On May 6, 2015, the Department of Veteran Affairs indicated "[e]valuation of post-traumatic stress disorder with mood disorder NOS and functional cognitive impairment due to PTSD (also claimed as depression, insomnia, and short term memory loss), which is currently 70 percent disabling, is increased to 100 percent effective June 24, 2014." (Tr. 2813). The assignment of 100 percent disabling due to PTSD was based upon the following: difficulty in adapting to work; neglect of personal appearance and hygiene; near-continuous panic affecting the ability to function independently, appropriately and effectively; difficulty adapting to stressful circumstances; near-

continuous depression affecting the ability to function independently, appropriately and effectively; impaired abstract thinking; disturbances of motivation and mood; flattened affect; difficulty in understanding complex commands; difficulty in establishing and maintaining effective work and social relationships; panic attacks; mild memory loss; depressed mood; chronic sleep impairment; and suspiciousness. (Tr. 2814). This evidence was submitted to the Appeals Council after the ALJ entered his decision.

In this case, there is no dispute that the ALJ did not specifically weigh the VA disability rating or even mention it in his decision. Thus, it is clear that the ALJ failed to even implicitly weigh the rating, let alone accord it great weight in evaluating Plaintiff's claim. The Court finds that the ALJ's failure to do so constitutes reversible error.

Defendant notes that Plaintiff was not given a 100 percent disability rating and the VA had not determined Plaintiff's unemployability at the time the ALJ made his decision. Thus, Defendant argues, the ALJ's error was harmless because the VA disability rating was consistent with the ALJ's decision. The Court rejects this argument. Contrary to Defendant's claim, it is not clear that the ALJ's RFC finding accounts for the limitations described in Plaintiff's VA disability rating from December 2013. Defendant merely provides a conclusory claim that the RFC is consistent with the VA disability rating because the RFC included significant mental limitations due to PTSD. (Doc. 30 p. 16). This consistency is not apparent, especially in the absence of any discussion of the VA disability rating by the ALJ. Further, the Court rejects Defendant's argument that because Plaintiff had not received a 100 percent disability rating, the ALJ's failure to weigh, let alone acknowledge, the VA disability determination was harmless. Defendant provides no legal support showing such a requirement.

The ALJ's failure to acknowledge and weigh Plaintiff's VA disability rating is understandable given the nearly 3000 pages in Plaintiff's voluminous record. Nevertheless, for the reasons explained above, remand is proper. On remand, the ALJ shall evaluate the evidence pertaining to Plaintiff's VA disability rating, including the records from May 2015, which relate back to the period at issue, state the weight accorded to the ratings, and explain his reasoning.

As the ALJ's evaluation of Plaintiff's VA disability ratings may alter his RFC finding and subsequent findings at step four and five, the Court defers from addressing Plaintiff's other raised issues at this time.

### III.   Conclusion

The decision of the Commissioner is **REVERSED AND REMANDED**. The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on February 22, 2017.

*[signature]*
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties